## UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**MICHAEL PARKINS,**　　　　　　　　**CASE NO.**

　　**Plaintiff,**

**v.**

**CARLOS DEL TORO,**
**In his official capacity as Secretary,**
**U.S. Department of the Navy**

　　**Defendant.**
**_____/**

## COMPLAINT

　　Plaintiff, MICHAEL PARKINS, hereby sues Defendant, CARLOS DEL TORO in his official capacity as the Secretary of the U.S. Department of the Navy, and alleges:

## JURISDICTION

　　1.　This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981a and under the Rehabilitation Act, codified at 29 U.S.C. §794, et seq.. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, MICHAEL PARKINS, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of his race and by dint actual or perceived physical or mental disability and/or record of impairment which Defendant is aware of. Further, Plaintiff reported Defendant's unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, CARLOS DEL TORO, in his Official Capacity as the Secretary of the U.S. Department of the Navy, has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant on October 1, 2009, and, at all times pertinent to this action, has worked as a Firefighter and Emergency

Medical Technician ("EMT") at Defendant's Naval Support Activity ("NSA") facility in Panama City, Florida.

7. Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his race and his actual or perceived physical or mental disability and/or record of impairment. Plaintiff has been retaliated against after reporting this discrimination.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Commander Keith Foster ("Foster"), a white male; Assistant Commander Christine Cairoli ("Cairoli"), a white female; Fire Chief Thad Mapledoram ("Mapledoram"), a white male; Assistant Fire Chief Derric Barber ("Barber"), a white male; and Captain Emily Gray ("Gray"), a white female.

9. On or about May 25, 2021, Plaintiff asked Chief Mapledoram a question about the minimum manning requirements for the station. Mapledoram ignored and did not answer Plaintiff. Shortly thereafter, Plaintiff's white male coworker, Matt Koenig ("Koenig), asked a similar policy question and was given an answer and also an explanation as to why NSA Panama City was not following the minimum manning guidelines, which is at least 4 firefighters on duty. Plaintiff felt disrespected and embarrassed because of the way he was ignored but his white coworker was not.

10. Later that day, Mapledoram wanted to clear out parking space because he was going to host an event at the station. Mapledoram requested everyone to move their vehicles to further out parking spaces so the guests would have the closest spaces. However, he firmly ordered Plaintiff to move his vehicle, which is never the practice for non-military members at NSA Panama City.

11. On or about June 8, 2021, Mapledoram instructed Gray to write a Memorandum for Record ("MFR") to document Plaintiff being five minutes late to the gymnasium. This was not consistent with Defendant's policies as there was never a designated time to be at the gymnasium nor a policy requiring Firefighters to exercise.

12. In contrast, on or about June 23, 2021, Gray, white female, and Chuck Brozina ("Brozina"), white male, were late to the gymnasium and had no memoranda written by Defendant for their tardiness. In fact, Defendant did not even issue them a verbal warning. No reprimand was given to another white coworker, Koenig, for not being shaven.

13. On or about that same day, June 8, 2021, Plaintiff began feeling ill and experienced elevated blood pressure along with chest discomfort. Due to his condition, Plaintiff requested that he take sick leave.

14. While filling out his sick leave on his computer and waiting for a definitive answer for his sick leave, Plaintiff was advised by coworker George

4

Harmon ("Harmon"), white male, to not leave the station and finish filling out the sick leave form on their electronic attendance system so he could be safe from being listed as Absent Without Leave ("AWOL"). While filling out the form in the system, Ms. Gray informed Plaintiff that Mapledoram refused to allow his sick leave on the pretext that it would place them below the minimum manning levels of four firefighters on duty.

15. After being denied his leave, frustrated that he was being denied leave, reached out to the Command Duty Officer via phone and told him about the incident that happened and requested him call the base Commander, Assistant Commander, and Command Master Chief so they could intervene.

16. After that, Plaintiff had to call 911 to receive emergency care for his elevated blood pressure, which had significantly worsened.

17. While waiting for an ambulance to arrive, Plaintiff received some care and treatment from co-workers Harmon and Taylor Weissbeck ("Weissbeck") because of his worsening medical condition.

18. While he was receiving care, Mapledoram attempted to go near Plaintiff, to which Plaintiff responded by telling his coworkers, Harmon and Weissbeck, that he did not want Mapledoram near him at the moment. In response to this, Mapledoram assaulted Plaintiff by approaching Plaintiff with his fists raised

in an aggressive manner. This led Plaintiff to experience increased stress and also physical and emotional pain.

19. Plaintiff was then transferred and treated at the local hospital until he was released nine hours later. Plaintiff was placed under monitoring by his physician for a period of 6 months because of his health.

20. Shortly after this incident, Plaintiff reported that he was the victim of discrimination to his union, American Federation of Government Employees and a grievance was filed.

21. In contrast to the way that Plaintiff was treated, on June 11, 2021, Mapledoram approved Thomas Perles, white male, sick leave request even though doing so placed the facility below the minimum manning levels.

22. Plaintiff has been diagnosed with elevated blood pressure which has made him suffer from nose bleeds, migraines, acid reflux, headaches and other more personal issues. Due to this, Plaintiff is now restricted on the amount of physical or stressful labor, personal and professional, that he can do on a daily basis. Plaintiff advised the Defendant of his physical disability.

23. On or about June 13, 2021, Plaintiff was called to a meeting on base to discuss the incident of June 8, 2021. The meeting was between Plaintiff Union Vice President Kim Letai, Ms. Frida Moore from Labor Employee Relations, and Commander Foster.

24. During this meeting Plaintiff was told that he was going to be put on Paid Investigative Leave by Defendant. The excuse of this leave was that they had to investigate the June 8, 2021, incident. However, Foster verbally explained to Plaintiff that he was being placed on leave because Plaintiff "needed a break from Mapledoram."

25. On or about June 13, 2021, Plaintiff had to, once again, go to the Emergency Room because of his elevated blood pressure elevating.

26. During this period of Paid Investigative Leave, Plaintiff was under excessive amounts of stress and emotional distress. Plaintiff did not know if there would be negative employment consequences or if he was going to be terminated as he would ask his supervisors and receive no response.

27. During this period of Paid Investigative Leave, Plaintiff continued to experience nose bleeds, migraines, acid reflux, headaches and other more personal symptoms.

28. On or about July 20, 2021, Plaintiff had a telephone conference with Cairoli.

29. Sometime on or about August 13, 2021, Plaintiff was requested to come to NSA Panama City to speak to Foster in person. During that meeting, Plaintiff informed Foster of the incidents of race discrimination that he suffered at the hands

of Mapledoram. Plaintiff told Foster that Mapledoram was racist in the way that he treated him. To this Foster replied that, "none of that was true."

30. On or about August 27, 2021, Plaintiff received an email from Barber directing him to return to work.

31. On or about August 27, 2021, Plaintiff alongside Union Vice President Kim Letai, met with Cairoli to further discuss Plaintiff's grievance that was pending at the time about the way he had been treated by Mapledoram. During this conference Plaintiff expressed his concern that he no longer would feel safe at work. Plaintiff requested that management take remedial action to stop the various forms of discrimination that he was experiencing at NSA Panama City. However, no action was taken by Cairoli to try to remediate and stop the discrimination that was occurring at NSA Panama City.

32. On or about September 1, 2021, Plaintiff returned to work at full status without any restrictions.

33. On or about September 19, 2021, Plaintiff submitted his FLMA form to Barber disclosing his physical and/or mental disability and/or record of impairment.

34. Mr. Barber then said "So what's this? You can just call out now when you want to?" Plaintiff cordially responded, "when I call out and it's pertaining to what's in the paperwork, it will be for FMLA."

35. On or about September 16, 2021, Elicia Pisaña ("Pisaña"); who at the time was the Fiancé of Mr. Seko Miller ("Miller"), a fire inspector for NSA Panama City and coworker of Plaintiff; invited Miller to join her at Blue Moon Bar and Grill ("Blue Moon") in Lynn Haven, Florida.

36. Shortly upon Ms. Pisaña arriving and meeting Miller at Blue Moon, Mapledoram arrived at Blue Moon as well. Ms. Pisaña asked Miller why Mapledoram was there, and Miller responded that he had invited him to join them.

37. At first, the three of them were just conversing about daily activities which ended up shifting to Miller and Mapledoram discussing work activities, specifically those relating to NSA Panama City. During the conversation Pisaña heard Mapledoram tell Miller "this bullshit would not be happening in an all-white fire department, the only ones having a problem are Allen (African American), Mike (Plaintiff), and Pitts (African American)." At the fire station at NSA Panama City, Plaintiff, Allen, and Pitts are the only African American subordinates of Mapledoram. Throughout the conversation between Miller and Mapledoram. The African Americans were referred to as the problem children.

38. During the conversation, Mapledoram stated that clearly no one had put all of them in their place, to which Miller replied in agreement that "they should all just do what the chief says, and it will all work out."

9

39. Mapledoram replied that if they continued to make it hard for him, he was going to "make sure they didn't have a job anymore." Then both of them started talking about ways that they could terminate Plaintiff, Allen, and Pitts.

40. In their plot, they talked about how they could go through the certifications of Plaintiff, Allen, and Pitts to see what they could remove or consider not valid, so that they could terminate them for not meeting the requirements to be Firefighters EMTs.

41. The conversation of Miller and Mapledoram witnessed by Ms. Pisaña further proves Defendant's racially discriminatory agenda at NSA Panama City for which Plaintiff has continually suffered.

42. On or about October 4, 2021, Plaintiff was approved for FMLA leave.

43. On or about October 25, 2021, Plaintiff received an email and voicemail from Barber stating that he was placed on Leave Without Pay ("LWOP"). This was without Plaintiff requesting to be placed on leave. The nature of the LWOP status was punitive and retaliatory for Plaintiff's having been approved for his FMLA leave due to his disabling condition. The pretext was that upon receiving medical paperwork from the base medical provider, it was deemed that, Plaintiff had chest pain radiation down his arm, which Plaintiff never stated. Somehow, after reviewing Plaintiff's FMLA paperwork, Defendant decided that Plaintiff was unfit for duty.

44. Later that day, Plaintiff was told by Barber via voice mail to come back to work immediately.

45. On or about October 26, 2021, Plaintiff was told he was fit for duty after he was cleared by his personal physician. Even though he was allowed to return, Plaintiff was not allowed to work in his usual capacity and was isolated in an office.

46. The following day, October 27, 2021, Plaintiff once again obtained a clearance letter, this time from the base medical provider, to try to return to his usual functions. However, Defendant refused to allow him to return to full status even with the second clearance letter.

47. By December 17, 2021, Plaintiff was finally allowed to return to full duty although, by then, he had exhausted at least part if not all of his FMLA leave.

48. Further, on or about December 17, 2021, when Plaintiff was permitted to return to work in full duty status, Barber told Plaintiff he was going to use Plaintiff's clearance from October 27, 2021, to allow him to return to work, making it clear that all the time that elapsed after that clearance letter in which Plaintiff was not allowed to return to work on full status was wrong and he should have been permitted to work that entire time.

49. During the period of time between October 25, 2021, and December 17, 2021, Plaintiff was not allowed to work in his usual functions and was isolated

in an office. Plaintiff's coworkers would sometime step into his office and complain to him about why he was there and not helping them.

50. His coworkers would also complain that because of him not being able to work, Defendant had them working overtime. Plaintiff was so negatively impacted and under such emotional distress by this that he had to use leave time because his isolation and not being able to work with too much of an emotional load for him to handle.

51. Defendant continuously created an environment where Plaintiff exhausted all or almost all of his leave balances so that in the future Plaintiff would be unable to take any days off should an emergency arrive.

52. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION

53. Paragraphs 1 through 52 are re-alleged and incorporated herein by reference.

54. This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a.

55. Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated white employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his race.

56. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

57. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

58. Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

59. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

60. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant and impaired Plaintiff's right to make and enforce contracts.

61. The events set forth herein led, at least in part, to Plaintiff's termination.

62. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §1981a and 42 U.S.C. §2000e et seq.

63. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

### COUNT II
### DISABILITY DISCRIMINATION

64. Paragraphs 1 through 55 above are re-alleged and incorporated herein

65. This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 29 U.S.C. §794, et seq.

66. Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

67. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

68. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

69. In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

70. The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff being assaulted, being placed in isolation in the workplace, and his different types of leave being exhausted.

71. Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

72. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiff is entitled to equitable/injunctive relief.

## COUNT III
## RETALIATION

73. Paragraphs 1 through 52 are re-alleged incorporated herein by reference.

74. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting his under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

75. Defendant is an employer as that term is used under the applicable statutes referenced above.

76. The foregoing unlawful actions by Defendant were purposeful.

77. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

78. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

79. Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

80. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## RETALIATION

81. Paragraphs 1 through 52 above are re-alleged and incorporated.

82. Defendant is an employer as that term is used under the applicable statutes referenced above.

83. This count sets forth a claim for unlawful retaliation under 29 U.S.C §794.

84. Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing and adverse employment actions were then taken against Plaintiff.

85. Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights as a result of Plaintiff exercising or enjoying Plaintiff's rights or encouraging another to do so.

86. The foregoing unlawful actions by Defendant were purposeful.

87. Because of Plaintiff's reporting Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's Plaintiff being assaulted, being placed in isolation in the workplace, and his different types of leave being exhausted.

88. Plaintiff is a member of a protected class after reporting Defendant's unlawful employment practices and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

89. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss

of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to equitable/injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record by CM/ECF this 17th day of March, 2022.

/s/ Marie A. Mattox
Marie A. Mattox